**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORON LEKEITH LOWE<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF RIVERSIDE; CITY OF HEMET; HEMET POLICE DEPARTMENT OFFICER DYLAN DETWILER; and DOES 1-10, inclusive.<br><br>Defendants. | CASE No.:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>1. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Excessive Force)<br>2. 42 U.S.C. § 1983 (Supervisor Liability)<br>3. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy)<br>4. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train)<br>5. 42 U.S.C. § 1983 (Municipal Liability – Ratification)<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff KORON LEKEITH LOWE for his Complaint against COUNTY OF RIVERSIDE, CITY OF HEMET, DYLAN DETWILER; and DOES 1-10, inclusive and hereby alleges as follows:

## INTRODUCTION

1.     This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with law enforcement officers' uses of force, including the deployment of a canine, and deployment of 40mm launcher rounds, and additional use of force on PLAINTIFF on January 26, 2022.

2.     Defendant DYLAN DETWILER ("DETWILER") caused PLAINTIFF'S injuries by ordering his canine to bite PLAINTIFF and continue to bite PLAINTIFF when PLAINTIFF was not a threat of harm to any person, while less-intrusive measures were available, and while PLAINTIFF was not attempting to flee, causing PLAINTIFF injury, harm, and damages.

3.     DOE 1 caused various injuries herein by firing multiple 40mm rounds at PLAINTIFF when PLAINTIFF was not a threat of harm to any person, while less-intrusive measures were available, and while PLAINTIFF was not attempting to flee, causing PLAINTIFF injury, harm, and damages.

4.     DOES 2-3, inclusive, ("DOE DEPUTIES") caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident.

5.     DOES 4-6, inclusive, ("DOE OFFICERS") caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident.

6.     DOES 7-8, inclusive ("DOE SUPERVISORS") caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. DOE SUPERVISORS were supervisors of each and every individually named and unnamed involved officer and/or deputy. DOE SUPERVISORS are liable for leading and instructing subordinates regarding their actions and omissions, tactics, and use of force during the incident.

7.     Defendants COUNTY OF RIVERSIDE ("COUNTY") and DOE 9 also caused various injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). DOE 9 was and is the final policymaker for Defendant COUNTY, with final policymaking authority, who reviewed and ratified the constitutional violations of Defendant DOES 2-3, inclusive.

8.     Defendants CITY OF HEMET ("CITY") and DOE 10 also caused various injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). DOE 10 was and is the final policymaker for Defendant CITY, with final policymaking authority, who reviewed and ratified the constitutional violations of Defendant DOES 4-6, inclusive.

9.     This action is in the public interest as PLAINTIFF seeks by means of this civil rights action to hold accountable those responsible for their uses of force, including the deployment of the canine and use of 40mm rounds, and the serious bodily injury inflicted by DEFENDANTS, including by DYLAN DETWILER and DOES 1-8, as well as COUNTY OF RIVERSIDE'S and CITY OF HEMET'S ratification, failure to adequately train, and policy of inaction in the face of serious constitutional violations, as well as the unlawful custom and practice with respect to the use force, including the use of a K-9 to bite people and the use of 40mm rounds.

## THE PARTIES

10.     At all relevant times, PLAINTIFF was an individual residing in Riverside County, California.

11.     Defendant COUNTY is a political subdivision of the State of California that is within this judicial district.   Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Riverside County Sheriff's Department ("RCSD") and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the RCSD and its employees and agents complied with the laws of the United States and the State of California.   At all relevant times, Defendant COUNTY was the employer of Defendants DOE DEPUTIES and DOE SUPERVISORS.

12.     Defendant CITY is a political subdivision of the State of California that is within this judicial district.  Defendant CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Hemet Police Department ("HPD") and its agents and employees.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the HPD and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, CITY was the employer of Defendants DYLAN DETWILER, DOE OFFICERS and DOE SUPERVISORS.

13.     Defendant DETWILER is and was an officer working for Defendant CITY and HPD. At all relevant times, Defendant DETWILER was acting under color of law within the course and scope of his employment and duties as an officer working for Defendant CITY and HPD.  At all relevant

4

times, DETWILER was acting with the complete authority and ratification of his principal, Defendant CITY.

14.    Defendant DOE 1 is a sworn police officer working for the either RCSD or HPD. At all relevant times, DOE 1 was acting under color of law within the course and scope of his duties as a deputy working for either RCSD or HPD. At all relevant times, DOE 1 was acting with the complete authority and ratification of his principal, Defendant COUNTY or CITY.

15.    Defendant DOE DEPUTIES are deputies for RCSD. At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as RCSD deputies and at other times they were working in their personal capacity as individuals outside the scope of their employment. At all relevant times, Defendant DOE DEPUTIES were acting with the complete authority and ratification of their principal, Defendant COUNTY.

16.    Defendant DOE OFFICERS are officers for HPD. At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as HPD officers and at other times they were working in their personal capacity as individuals outside the scope of their employment. At all relevant times, Defendant DOE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

17.    Defendant DOE SUPERVISORS are supervisors that were law enforcement officials on scene during the incident employed by Defendants COUNTY and/or CITY. At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as COUNTY and/or CITY officers and at other times they were working in their personal capacity as individuals outside the scope of their employment. At all relevant times, Defendant DOE SUPERVISORS were acting with the complete

COMPLAINT FOR DAMAGES

authority and ratification of their principal, Defendant COUNTY and/or CITY.

18. Defendant DOE 9 is the managerial, supervisorial, or policymaking employee of RCSD who was acting under color of law within the course and scope of his or her duties as the supervisorial official for RCSD. Defendant DOE 9 was acting with the complete authority of his or her principal, Defendant COUNTY.

19. Defendant DOE 10 is the managerial, supervisorial, or policymaking employee of HPD who was acting under color of law within the course and scope of his or her duties as the supervisorial official for HPD. Defendant DOE 10 was acting with the complete authority of his or her principal, Defendant CITY.

20. PLAINTIFF is ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. PLAINTIFF will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained. PLAINTIFF is informed believes, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused PLAINTIFF'S damages. On information and belief, DOES 1-10, inclusive, were at all relevant times residents of the County of Riverside.

21. PLAINTIFF is informed and believes, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

22. PLAINTIFF is informed and believes, and on that basis alleges, that at all times mentioned herein Defendants DOES 1-3 and DOES 7-8 acted

under color of law, statute, ordinance, regulations, customs and usages of the State of California and COUNTY.

23.     PLAINTIFF is informed and believes, and on that basis alleges, that at all times mentioned herein Defendants DETILLER and DOES 1, 4-6, and 9-10 acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and CITY.

24.     All Defendants who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the RCSD and/or HPD.

25.     PLAINTIFF suffered serious bodily injury as a direct and proximate result of the actions of Defendants DETWILER and DOES 1-10 inclusive.  Defendants DETWILER and DOES 1-10 are directly liable for PLAINTIFF'S injuries under federal law pursuant to 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

26.     The Court has jurisdiction over PLAINTIFF'S claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFF asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

27.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

28.     PLAINTIFF repeats and re-alleges each and every allegation of paragraphs 1 through 27, inclusive, as if fully set forth herein.

29.   PLAINTIFF sustained injuries, including but not limited to pain and suffering when Defendant DETWILER repeatedly deployed his K-9 on PLAINTIFF.

30.   PLAINTIFF sustained further injuries when he was shot repeatedly including in the face, head, and body by DOE 1 with 40mm rounds.

31.   On January 26, 2022, PLAINTIFF was sitting in a car in the parking lot of Morongo Casino, 49500 Seminole Dr., Cabazon, CA 92230.

32.   Upon information and belief, PLAINTIFF was not in the driver's seat of the car and was the sole occupant of the car at the time. PLAINTIFF was initially in the front passenger seat and eventually moved to the rear seat of his car. Several officers and deputies surrounded the subject car in such a way that it was clear they did not conclude PLAINTIFF was armed with any deadly weapons. PLAINTIFF did not have any weapons of any kind in the car or on his person.

33.   Defendants DETWILER and DOE DEFENDANTS 1-8 sought to remove PLAINTIFF from his car. Instead of de-escalating the situation and giving PLAINTIFF a reasonable opportunity to comply, Defendant DETWILER released his canine and repeatedly ordered the canine to bite PLAINTIFF.

34.   Defendant DETWILER deployed his canine several times, each time encouraging the canine to bite PLAINTIFF. The canine repeatedly bit PLAINTIFF causing serious bodily injury.

35.   Officers are trained, including Defendants DETWILER, DOE 1, and DOE SUPERVISORS, that deadly force is any force that creates a substantial risk of causing serious bodily injury.

36.   Upon information and belief, Defendants DETWILER and DOE SUPERVISORS knew at the time of the incident that a canine bite has a substantial risk of causing serious bodily injury. Further, Defendants

DETWILER and DOE SUPERVISORS knew that a canine bite would cause more than a minimal risk of injury. The canine's repeated vicious attacks constituted deadly force.

37.     Prior to Defendant DETWILER first deploying the canine to attack PLAINTIFF, PLAINTIFF was alone in the vehicle, was not attempting to flee, was not armed with a gun or knife, was not armed with or had in his possession any weapon that could create a significant risk of injury, had not verbally threatened any officer, and had not attempted to harm any officer. PLAINTIFF did not present a danger to any person at the time of the canine attacks and was not an immediate threat of death or serious bodily injury.

38.     At the same time that the canine attacked PLAINTIFF multiple times, Defendant DOE 1 shot PLAINTIFF multiple times with 40mm rounds. The rounds hit PLAINTIFF among other places in his head and face.

39.     Upon information and belief, Defendants DOE 1 and DOE SUPERVISORS knew at the time of the incident that a 40mm round has a substantial risk of causing serious bodily injury especially when deployed at a person's head and face. Further, Defendants DOE 1 and DOE SUPERVISORS knew that a canine bite will cause more than a minimal risk of injury. The repeated use of the 40mm at PLAINTIFF'S head and face constituted deadly force.

40.     Prior to Defendant DOE 1 first deploying the 40mm at PLAINTIFF and for each and every subsequent deployment, PLAINTIFF was alone in the vehicle, was not attempting to flee, was not armed with a gun or knife, was not armed with or had in his possession any weapon that could create a significant risk of injury, had not verbally threatened any officer, and had not attempted to harm any officer. PLAINTIFF did not present a danger to any person at the time of the 40mm deployments and was not an immediate threat of death or serious bodily injury.

COMPLAINT FOR DAMAGES

41.    PLAINTIFF made no efforts to escape from the officers or deputies, and was not being assaultive to the officers or deputies.

42.    Upon information and belief, PLAINTIFF was not attempting to resist arrest. Even though PLAINTIFF was not resisting, PLAINTIFF had the right to resist excessive force and/or defend himself the continual use of excessive force.

43.    PLAINTIFF writhed in pain from the vicious and prolonged K-9 attacks and from the multiple 40mm round deployments.

44.    PLAINTIFF was subjected to unreasonable and excessive force, including deadly force, inflicted through the unreasonable and excessive deployment of the police K-9, through the failure and/or refusal to terminate the unreasonable and excessive deployment and use of the police K-9, and through the improper and excessive use of restraint procedures, which caused PLAINTIFF to experience severe and debilitating injuries.

45.    PLAINTIFF was further subjected to unreasonable and excessive force, including deadly force, inflicted through the unreasonable and excessive use of 40mm rounds fired among other places at PLAINTIFF's face and head which caused PLAINTIFF to experience severe and debilitating injuries, including a brain bleed and the loss of an eye.

46.    Despite the presence of several armed officers and deputies against the lone PLAINTIFF, Defendant DETWILER repeatedly commanded the K-9 to bite PLAINTIFF.  As a result of the K-9's bite, PLAINTIFF experienced serious bodily injury.

47.    Despite the presence of several armed officers and deputies against the lone PLAINTIFF, Defendant DOE 1 repeatedly shot PLAINTIFF among other places in the head and face.  As a result of the 40mm rounds, PLAINTIFF experienced serious bodily injury.

48.    The use of force was excessive and objectively unreasonable under the circumstances, especially because PLAINTIFF did not pose an immediate threat of death or serious bodily injury to anyone at the time of the repeated canine attacks or repeated use of 40mm rounds, PLAINTIFF was not an immediate threat of harm to any person, PLAINTIFF was not attempting to resist or flee, and there were several reasonable alternative to this extreme use of force available to the officers and deputies.

## **FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF against Defendant DETWILER and DOES 1-8, inclusive)

49.    PLAINTIFF repeats and re-alleges each and every allegation of paragraphs 1 through 48, inclusive, as if fully set forth herein.

50.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

51.    When Defendants DETWILER, and DOES 1-8, inclusive, arrived at the Morongo Casino parking lot, PLAINTIFF was not threatening any person and was not attempting to commit a crime.

52.    DEFENDANTS failed to employ tactics to de-escalate the situation, failed to give PLAINTIFF the time and space to understand the police presence, failed to give PLAINTIFF proper commands and the time to comply with those commands, and failed to give PLAINTIFF the opportunity to cooperate with police instructions.

53.    PLAINTIFF never threatened any officer or deputy, made no aggressive movements toward any officer or deputy, and did not attempt to inflict harm on any officer or deputy.  PLAINTIFF was held at gunpoint by

multiple deputies, which show of force alone was sufficient to effectuate a seizure of PLAINTIFF.

54.    Throughout the incident, PLAINTIFF presented no immediate threat to the safety of the Defendants or others, including not an immediate threat of death or serious bodily injury to any Defendant or other person.

55.    Defendant DETWILER and DOES 1-8 used excessive and unreasonable force, including deadly force, against PLAINTIFF. PLAINTIFF was not an immediate threat of death or serious bodily injury to Defendants or anyone else when Defendants used excessive and unreasonable force, including deadly force, on PLAINTIFF.

56.    Defendant DETWILER and DOES 1-8 caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants' acts and omissions deprived PLAINTIFF of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

57.    As a direct result of the aforesaid acts and omissions Defendant DETWILER and DOES 1-8, PLAINTIFF suffered great physical and mental injury, fear and emotional distress related to his physical injuries, and loss of his earning capacity in an amount according to proof.

58.    The conduct of Defendant DETWILER and DOES 1-8 alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and warrants the imposition of exemplary and punitive damages in an amount according to proof.

59.    Defendant DETWILER and DOES 1-8 were acting under color of state law and within the course and scope of their employment as officers for CITY or deputies for COUNTY.

60.     PLAINTIFF seeks compensatory and punitive damages under this claim. PLAINTIFF also seeks attorneys' fees and costs under this claim.

## **SECOND CLAIM FOR RELIEF**

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF against DOE SUPERVISORS)

61.     PLAINTIFF repeats and re-alleges each and every allegation of paragraphs 1 through 60, inclusive, as if fully set forth herein.

62.     At all relevant times herein, Defendants DETWILER and DOES 1-8 were acting under color of law and within the course and scope of their employment with Defendant COUNTY and/or CITY during this incident.

63.     The acts of Defendants DETWILER and DOES 1-6 violated PLAINTIFF'S Constitutional rights as described and incorporated herein AS alleged above. In doing so, Defendants used excessive force against PLAINTIFF causing PLAINTIFF substantial injury, harm, and damages.

64.     Upon information and belief, prior to the uses of excessive force, knowing that PLAINTIFF was calmly alone in the car and could be suffering from a mental health crisis, DOE SUPERVISORS instead failed to develop a plan to minimize injury and protect PLAINTIFF, failed collect and disseminate information, failed to coordinate and communicate with officers and deputies, failed to contact the appropriate mental health resources, and failed to de-escalate the situation.

65.     Defendant DOE SUPERVISORS knew that PLAINTIFF was nto an immediate threat of harm to any person and failed to attempt to communicate with PLAINTIFF and build a rapport with him but instead instructed officers and deputies and/or acquiesced to officers and deputies escalating the situation to use of force and deadly force on PLAINTIFF.

66.    Defendant DOE SUPERVISORS contributed to the planning and decision to escalate the situation.

67.    Defendant DOE SUPERVISORS failed to instruct subordinates to maintain cover, maintain containment, and communicate with PLAINTIFF, failed to control the manner and scope of force used against PLAINTIFF, and failed to assess the effectiveness of that force prior to its continual use which resorted to deadly force.

68.    Defendant DOE SUPERVISORS should have but failed to recognize that a person suffering from a mental health crisis can have, as PLAINTIFF displayed during the incident, impaired ability to understand, think and concentrate; disturbances in thinking, feeling, and relating to others; inability to cope with the ordinary demands of life; extreme fright to a threat; and that mental illness is often difficult for even trained professionals.

69.    Defendant DOE SUPERVISORS knew that there are specific procedures were supposed to be followed according to training, but knowingly allowed subordinates to fail to follow, such as: utilizing professional mental health personnel, resources, and equipment, including a crisis team and County mental health agencies; respond in a manner that is humane, compassionate, and supportive; taking time to assess the situation; giving time for PLAINTIFF to calm down without further escalation of the situation; providing reassurance that officers and deputies are there to help; eliminate distractions; assume a nonthreatening posture and tone; and to not threaten PLAINTIFF or create additional fright or stress.

70.    The lack of supervision, leadership, and control over subordinates, such as Defendants DETWILER and DOE 1, contributed to the unreasonable and unnecessary tactics and force used during the incident.

71.    Upon information and belief, Defendant DOE SUPERVISORS had the responsibility as supervisor(s) to ensure that subordinates had the same

and accurate information, and the responsibility to formulate and ensure subordinates on scene understood the tactical plan but failed to adequately do so. Defendant DOE SUPERVISORS failed to intervene by not instructing subordinates to lower their weapons to a ready position such that they were not pointed directly at pointing but easily deployable, if necessary, despite knowing that PLAINTIFF was likely suffering from a mental health crisis and was merely sitting alone in in the car and despite there being time and opportunity to intervene and choose a different tactic. Defendant DOE SUPERVISORS participated in the planning and instructing of the positioning of patrol vehicles with inappropriate distance and position. Defendant DOE SUPERVISORS integrally participated in the use of force by instructing subordinates to do so. Defendant DOE SUPERVISORS did not give PLAINTIFF adequate commands or verbal warnings and did not attempt to de-escalate the situation with PLAINTIFF or direct subordinates to de-escalate the situation. Defendant DOE SUPERVISORS knew of and participated in the plan to use force on PLAINTIFF.

72. Defendant DOE SUPERVISORS knowingly contributed, participated in, and failed to terminate or intervene in the constitutional violations as described herein.

73. In other words, the conduct of Defendant DOE SUPERVISORS violated PLAINTIFF'S rights through their unconstitutional policies, procedures, training, supervision, and direct involvement in this action.

74. By their individual conduct as described herein, Defendant DOE SUPERVISORS set in motion a series of acts by their subordinates according to these Supervisors' plan and lack thereof. Once set in motion, Defendant DOE SUPERVISORS refused to terminate that series of acts by their subordinates, that Defendant DOE SUPERVISORS knew or reasonably should have known would cause the subordinates to deprive PLAINTIFF of his rights.

75.     Defendant DOE SUPERVISORS disregarded the known and/or obvious consequence that their policy, training, and supervision deficiencies and omissions would cause their subordinates to violate PLAINTIFF'S constitutional rights; and the policy and training deficiencies and omissions of Defendant DOE SUPERVISORS caused their subordinates to deprive PLAINTIFF of his constitutional rights.

76.     Defendant DOE SUPERVISORS' conduct was so closely related to the deprivation of rights of PLAINTIFF, specifically because they personally participated in those deprivations, that it was the moving force that caused PLAINTIFF'S ultimate injury, harm, and/or damages.

77.     As a direct result of the aforesaid acts and omissions Defendant DOE SUPERVISORS, PLAINTIFF suffered great physical and mental injury, fear and emotional distress related to his physical injuries, and loss of his earning capacity in an amount according to proof.

78.     The conduct of Defendant DOE SUPERVISORS alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and warrants the imposition of exemplary and punitive damages in an amount according to proof.

79.     Defendant DOE SUPERVISORS were acting under color of state law and within the course and scope of their employment as officers for the CITY or deputies for the COUNTY.

80.     PLAINTIFF seeks compensatory and punitive damages under this claim. PLAINTIFF also seeks attorneys' fees and costs under this claim.

### THIRD CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

(By PLAINTIFF against CITY, COUNTY; and DOES 9-10, inclusive)

81.   PLAINTIFF repeats and re-alleges each and every allegation of paragraphs 1 through 80, inclusive, as if fully set forth herein.

82.   Defendants DETWILER, and DOES 1-10, inclusive, acted under color of state law.

83.   Defendants DETWILER, and DOES 1-8, inclusive, acted pursuant to an expressly adopted of fiscal policy or longstanding practice or custom of the Defendant CITY and Defendant COUNTY, and DOES 9-10, inclusive.

84.   On information and belief, Defendants DETWILER, and DOES 1-8, inclusive, were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with deprivation of PLAINTIFF'S rights.

85.   Defendants CITY and COUNTY, and DOES 9-10, inclusive, together with other CITY and COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)   Using excessive and unreasonable force, including deadly force on unarmed persons who do not pose an immediate risk of death or serious bodily injury to others;

(b)   Knowingly allowing a K-9 to inflict serious bodily injury on a person who is not assaultive and who is not an immediate threat of death or serious bodily injury;

(c)   Knowingly firing 40mm rounds at the head and face of an individual who is not an immediate threat of death or serious bodily injury;

(d)   Providing inadequate training regarding the use of force, including deadly force;

(e)   Providing inadequate training regarding de-escalation;

(f)   Employing and retaining as police officers, individuals such as Defendants DETWILER, and DOES 1-8, inclusive, who Defendants

17

CITY and COUNTY, and DOES 9-10, inclusive, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(g)     Inadequately supervising, training, controlling, assigning, and disciplining CITY officers and COUNTY deputies, and other personnel, including Defendants DETWILER, and DOES 1-8, inclusive, who CITY and COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits;

(h)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by deputies of the CITY and COUNTY;

(i)     Failing to adequately discipline CITY officers and COUNTY deputies for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(j)     Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officers do not report other officers' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

86.     By reason of the aforementioned acts and omissions, PLAINTIFF has endured substantial pain and suffering.

87.     Defendants CITY and COUNTY, and DOES 9-10, inclusive, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFF and other individuals similarly situated.

88.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants CITY and COUNTY, and DOES 9-10, inclusive, acted with intentional, reckless, and callous disregard for the PLAINTIFF'S Constitutional rights.   Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by Defendants CITY and COUNTY and DOES 9-10, inclusive, were affirmatively linked to and were a significantly influential force behind PLAINTIFF'S injuries.

89.     The acts of each of Defendants DOES 9-10, inclusive, were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants imposition of exemplary and punitive damages as to DOES 9-10, inclusive.

90.     Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY's and COUNTY'S unconstitutional policies, where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the

County of Riverside routinely ratifies such behavior and maintains a practice of allowing such behavior:

(a)     In *A.F., et al. v. County of Riverside, et al.*, case number 5:15-cv-01603 JGB (DTBx), Defendant COUNTY failed to discipline its deputy who attacked a man with his K-9 and shot used deadly force against him while he was not an immediate threat of death or serious bodily injury to anyone;

(b)     In *Howard v. County of Riverside, et al.*, case number 5:12-cv-00700 VAP (OPx), Defendant COUNTY argued that the use of deadly force against an unarmed individual was reasonable; a federal jury found otherwise and returned a verdict in favor of plaintiff, an unarmed man who suffered a severe brain injury and partial paralysis after a use of force by a COUNTY sheriff's deputy;

(c)     In *Travillion v. County of Riverside*, case number EDCV 14-0003 VAP (DTBx), Defendant COUNTY failed to discipline its deputy who used deadly force on a man who was not an immediate threat of death or serious bodily injury to anyone;

(d)     In *Bosch v. County of Riverside*, case number EDCV 13-02352 (SVW)(FFM), Defendant COUNTY failed to discipline its deputy who used deadly force on an unarmed man who was not an immediate threat of death or serious bodily injury to anyone;

(e)     In *Castillo v. County of Riverside*, case number EDCV 13-00789 VAP (SPx), Defendant COUNTY failed to discipline its deputy who used deadly force on a man who was not an immediate threat of death or serious bodily injury to anyone;

(f)     In *Munoz v. County of Riverside*, case number RIC120794, plaintiff argued that the involved COUNTY Sheriff's deputy used deadly

force against her son at a time when he posed no immediate threat.  The jury in that case returned a verdict in favor of plaintiff;

(g)      In *L.R., et al. v. County of Riverside, et al.,* case number 15-cv-1767, Defendant COUNTY failed to discipline its deputy who used deadly force on an unarmed man who was not an immediate threat of death or serious bodily injury to anyone;

(h)      In *Galvan v. County of Riverside, et al.*, case number 5:21-cv-00384 JGB (SHKx), Defendant COUNTY failed to discipline its deputy who entered plaintiff's room while plaintiff was sleeping and immediately escalated the situation by commanding a canine to attack plaintiff, including being bit in the neck, a use of deadly force under the circumstances, while plaintiff was not an immediate risk of harm to anyone;

(i)      In *Arocha v. County of Riverside, et al.*, case number 5:18-cv-01585 DMG (SHKx), Defendant COUNTY failed to discipline its deputy who viciously punched plaintiff in the face resulting in loss of consciousness and a broken orbital bone, a use of deadly force under the circumstances, while plaintiff was not an immediate risk of harm to anyone;

(j)      In *Cortina v. County of Riverside, et al.*, case number 5:18-cv-01579 DDP (SPx), Defendant COUNTY failed to discipline its deputy who used force including deadly force, including deployment of a chemical agent, on an unarmed man who was not an immediate threat of harm to anyone;

(k)      In *Aguirre, et al. v. County of Riverside, et al.*, case number 5:18-cv-00762 DMG (SPx), Defendant COUNTY failed to discipline its deputy who used excessive force against the decedent who was not an immediate threat of death or serious bodily injury, arguing that the force was reasonable even after a unanimous jury returned a verdict in favor of plaintiffs;

(l)    In *Orellana v. County of Riverside, et al.*, case number 5:19-cv-01263 JGB (SHKx), Defendant COUNTY failed to discipline its deputies who used excessive force including deadly force against an unarmed man who was not an immediate threat of harm to anyone.

91.    By reason of the aforementioned acts and omissions of DEFENDANTS COUNTY OF RIVERSIDE and DOES 7-10, inclusive, PLAINTIFF suffered past and future pain and suffering, loss of enjoyment of life, medical expenses, and loss of earning capacity.

92.    Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY routinely ratifies such behavior and maintains a practice of allowing such behavior:

(a)    In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers;

(b)    In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with a man who was attacked by a K-9;

(c)    In *Mendoza v. City of Hemet, et al.*, case number 5:21-cv-01134-JGB-SHK, Defendant CITY settled with an unarmed woman who was shot in the back with kinetic rounds requiring emergency surgery;

(d)    In *Ladefoged, et al. v. City of Hemet, et al.*, case number 5:19-cv-00903 SVW (SHKx), Defendant CITY failed to discipline its officer who used excessive force against an unarmed man, including deployment of a K-9, taser, baton, and hobble restraint, which

constituted deadly force under the circumstances, while the man was not an immediate threat of death or serious bodily injury to anyone;

(e)     In *Martin v. City of Hemet, et al.*, case number 5:18-cv-02377 JGB (KKx), Defendant CITY failed to discipline its officer who used excessive deadly force against plaintiff who was not an immediate threat of death or serious bodily injury to anyone.

(d)     In the pre-litigation matter of *Gabriel Garcia v. City of Hemet*, Defendant CITY agreed to a money settlement with an unarmed man who was detained without cause and suffered a fractured orbital as the result of an unreasonable use of force by a CITY police officer.

(e)     On August 17, 2023, CITY police officer Jacob Hobson was criminally charged by the Riverside County District Attorney's Office with, among other things, two counts of assault by a peace officer under color of authority.

93.     Accordingly, Defendants CITY and COUNTY and DOES 7-10, inclusive, each are liable for compensatory damages under 42 U.S.C. § 1983.

94.     PLAINTIFF also seeks attorneys' fees and costs under this claim.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability for Failure to Train (42 U.S.C. §1983)**

(By PLAINTIFF against CITY, COUNTY; and DOES 9-10, inclusive)

95.     PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 94 of this Complaint with the same force and effect as if fully set forth herein.

96.     Defendants DETWILER, and DOES 1-8, inclusive, acted under color of law.

97.   The acts of Defendants DETWILER, and DOES 1-8, inclusive, deprived PLAINTIFF of his particular rights under the United States Constitution.

98.   On information and belief, CITY and COUNTY failed to properly and adequately train Defendants DETWILER, and DOES 1-8, inclusive, including but not limited to, with regard to the use of physical force, less than lethal force, lethal force, entry of one's residence, and deployment of K-9.

99.   The training policies of Defendants CITY and COUNTY were not adequate to train their officers to handle the usual and recurring situations with which they must deal, including de-escalation techniques, and the use of less than lethal and lethal force.

100.  Moreover, the training policies of Defendants CITY and COUNTY were not adequate to train their officers to handle the usual and recurring situations with which they must deal, including ensuring entry to one's residence is lawful, and deployment or use of K-9 is proper.

101.  The training that CITY officers and COUNTY Sheriff's deputies, including Defendant DETWILER and DOES 1-8, should have received with regards to the use of deployment of a canine against an unarmed man and use of 40mm rounds against an unarmed man and includes training that officers should not employ a canine on an unarmed subject who posed no threat of harm to officers or anyone else or shot 40mm rounds at an unarmed subject who posed no threat of harm to officers or anyone else.

102.  Defendants CITY and COUNTY and DOES 9-10, inclusive, were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

103.  The failure of Defendants CITY and COUNTY and DOES 9-10, inclusive, to provide adequate training caused the deprivation of PLAINTIFF'S rights by Defendants DETWILER, and DOES 1-8, inclusive;

that is, DEFENDANTS' failure to train is so closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

104. The following are only a few examples of cases where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the County of Riverside failed to adequately train its deputies with regard to the use of force:

(a) In *A.F., et al. v. County of Riverside, et al.*, case number 5:15-cv-01603 JGB (DTBx), Defendant COUNTY failed to discipline its deputy who attacked a man with his K-9 and shot used deadly force against him while he was not an immediate threat of death or serious bodily injury to anyone;

(b) In *Howard v. County of Riverside, et al.*, case number 5:12-cv-00700 VAP (OPx), Defendant COUNTY argued that the use of deadly force against an unarmed individual was reasonable; a federal jury found otherwise and returned a verdict in favor of plaintiff, an unarmed man who suffered a severe brain injury and partial paralysis after a use of force by a COUNTY sheriff's deputy;

(c) In *Travillion v. County of Riverside*, case number EDCV 14-0003 VAP (DTBx), Defendant COUNTY failed to discipline its deputy who used deadly force on a man who was not an immediate threat of death or serious bodily injury to anyone;

(d) In *Bosch v. County of Riverside*, case number EDCV 13-02352 (SVW)(FFM), Defendant COUNTY failed to discipline its deputy who used deadly force on an unarmed man who was not an immediate threat of death or serious bodily injury to anyone;

1    (e)    In *Castillo v. County of Riverside*, case number EDCV 13-

2    00789 VAP (SPx), Defendant COUNTY failed to discipline its deputy who

3    used deadly force on a man who was not an immediate threat of death or

4    serious bodily injury to anyone;

5    (f)    In *Munoz v. County of Riverside*, case number RIC120794,

6    plaintiff argued that the involved COUNTY Sheriff's deputy used deadly

7    force against her son at a time when he posed no immediate threat.  The

8    jury in that case returned a verdict in favor of plaintiff;

9    (g)    In *L.R., et al. v. County of Riverside, et al.,* case number 15-cv-

10   1767, Defendant COUNTY failed to discipline its deputy who used deadly

11   force on an unarmed man who was not an immediate threat of death or

12   serious bodily injury to anyone;

13   (h)    In *Galvan v. County of Riverside, et al.*, case number 5:21-cv-

14   00384 JGB (SHKx), Defendant COUNTY failed to discipline its deputy

15   who entered plaintiff's room while plaintiff was sleeping and immediately

16   escalated the situation by commanding a canine to attack plaintiff, including

17   being bit in the neck, a use of deadly force under the circumstances, while

18   plaintiff was not an immediate risk of harm to anyone;

19   (i)    In *Arocha v. County of Riverside, et al.*, case number 5:18-cv-

20   01585 DMG (SHKx), Defendant COUNTY failed to discipline its deputy

21   who viciously punched plaintiff in the face resulting in loss of

22   consciousness and a broken orbital bone, a use of deadly force under the

23   circumstances, while plaintiff was not an immediate risk of harm to anyone;

24   (j)    In *Cortina v. County of Riverside, et al.*, case number 5:18-cv-

25   01579 DDP (SPx), Defendant COUNTY failed to discipline its deputy who

26   used force including deadly force, including deployment of a chemical

27   agent, on an unarmed man who was not an immediate threat of harm to

28   anyone;

COMPLAINT FOR DAMAGES

(k)     In *Aguirre, et al. v. County of Riverside, et al.*, case number 5:18-cv-00762 DMG (SPx), Defendant COUNTY failed to discipline its deputy who used excessive force against the decedent who was not an immediate threat of death or serious bodily injury, arguing that the force was reasonable even after a unanimous jury returned a verdict in favor of plaintiffs;

(l)     In *Orellana v. County of Riverside, et al.*, case number 5:19-cv-01263 JGB (SHKx), Defendant COUNTY failed to discipline its deputies who used excessive force including deadly force against an unarmed man who was not an immediate threat of harm to anyone.

105.   Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY OF HEMET routinely ratifies such behavior and maintains a practice of allowing such behavior:

(a)     In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers;

(b)     In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with a man who was attacked by a K-9;

(c)     In *Mendoza v. City of Hemet, et al.*, case number 5:21-cv-01134-JGB-SHK, Defendant CITY settled with an unarmed woman who was shot in the back with kinetic rounds requiring emergency surgery.

(d)     In the pre-litigation matter of *Gabriel Garcia v. City of Hemet*, Defendant CITY agreed to a money settlement with an unarmed

man who was detained without cause and suffered a fractured orbital as the result of an unreasonable use of force by a CITY police officer.

(e)   On August 17, 2023, CITY police officer Jacob Hobson was criminally charged by the Riverside County District Attorney's Office with, among other things, two counts of assault by a peace officer under color of authority.

106.   By reason of the aforementioned acts and omissions, PLAINTIFF has suffered past and future pain and suffering, loss of enjoyment of life, medical expenses, and loss of earning capacity.

107.   Accordingly, Defendants CITY and COUNTY and DOES 9-10, inclusive, are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

108.   PLAINTIFF also seeks attorneys' fees and costs of suit.

## FIFTH CLAIM FOR RELIEF
### Municipal Liability – Ratification (42 U.S.C. § 1983)
(By PLAINTIFF against CITY, COUNTY; and DOES 9-10, inclusive)

109.   PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 108 of this Complaint with the same force and effect as if fully set forth herein.

110.   Defendants DETWILER, and DOES 1-8, inclusive, acted under color of law.

111.   The acts of Defendants DETWILER, and DOES 1-8, inclusive, deprived PLAINTIFF of his particular rights under the United States Constitution.

112.   Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

113.  Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants DETWILER, and DOES 1-8's, acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of Defendants DETWILER, and DOES 1-8's, acts.

114. On information and belief, CITY and COUNTY final policymakers, including DOES 9-10, inclusive, knew that PLAINTIFF never presented a risk of harm to an officer or anyone else and that PLAINTIFF was always unarmed during the incident and complied with officers' commands at the first moment he heard them.

115.  On information and belief, the official policies with respect to the incident are that officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the officers may use deadly force to prevent the individual's escape.  The officers' actions deviated from these official policies because PLAINTIFF did not pose an immediate threat of death or serious bodily injury to the involved officers or anyone.

116.  On information and belief, the CITY and COUNTY approved of the officers' actions after a hearing presented by the officers' legal counsel to DOES 9-10, inclusive, after which DOES 9-10, inclusive, found the officers' actions to be within the official policies of HPD and/or RCSD.  On information and belief, the basis for such approval was based on the deputies' self-serving statements that they feared PLAINTIFF presented a threat of harm to themselves or others, despite the plethora of evidence to the contrary, including evidence that PLAINTIFF was unarmed, submitted to the officers' commands when he heard them, and never presented a risk of harm to the officers or anyone else.

117.   Upon information and belief, a final policymaker has determined that the acts of DETWILER and DOES 1-6 were "within policy."

118.   The following are only a few examples of cases where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the County of Riverside routinely ratifies such behavior:

(a)   In *A.F., et al. v. County of Riverside, et al.*, case number 5:15-cv-01603 JGB (DTBx), Defendant COUNTY failed to discipline its deputy who attacked a man with his K-9 and shot used deadly force against him while he was not an immediate threat of death or serious bodily injury to anyone;

(b)   In *Howard v. County of Riverside, et al.*, case number 5:12-cv-00700 VAP (OPx), Defendant COUNTY argued that the use of deadly force against an unarmed individual was reasonable; a federal jury found otherwise and returned a verdict in favor of plaintiff, an unarmed man who suffered a severe brain injury and partial paralysis after a use of force by a COUNTY sheriff's deputy;

(c)   In *Travillion v. County of Riverside*, case number EDCV 14-0003 VAP (DTBx), Defendant COUNTY failed to discipline its deputy who used deadly force on a man who was not an immediate threat of death or serious bodily injury to anyone;

(d)   In *Bosch v. County of Riverside*, case number EDCV 13-02352 (SVW)(FFM), Defendant COUNTY failed to discipline its deputy who used deadly force on an unarmed man who was not an immediate threat of death or serious bodily injury to anyone;

(e)   In *Castillo v. County of Riverside*, case number EDCV 13-00789 VAP (SPx), Defendant COUNTY failed to discipline its deputy who

30

used deadly force on a man who was not an immediate threat of death or serious bodily injury to anyone;

(f)    In *Munoz v. County of Riverside*, case number RIC120794, plaintiff argued that the involved COUNTY Sheriff's deputy used deadly force against her son at a time when he posed no immediate threat.  The jury in that case returned a verdict in favor of plaintiff;

(g)    In *L.R., et al. v. County of Riverside, et al.,* case number 15-cv-1767, Defendant COUNTY failed to discipline its deputy who used deadly force on an unarmed man who was not an immediate threat of death or serious bodily injury to anyone;

(h)    In *Galvan v. County of Riverside, et al.*, case number 5:21-cv-00384 JGB (SHKx), Defendant COUNTY failed to discipline its deputy who entered plaintiff's room while plaintiff was sleeping and immediately escalated the situation by commanding a canine to attack plaintiff, including being bit in the neck, a use of deadly force under the circumstances, while plaintiff was not an immediate risk of harm to anyone;

(i)    In *Arocha v. County of Riverside, et al.*, case number 5:18-cv-01585 DMG (SHKx), Defendant COUNTY failed to discipline its deputy who viciously punched plaintiff in the face resulting in loss of consciousness and a broken orbital bone, a use of deadly force under the circumstances, while plaintiff was not an immediate risk of harm to anyone;

(j)    In *Cortina v. County of Riverside, et al.*, case number 5:18-cv-01579 DDP (SPx), Defendant COUNTY failed to discipline its deputy who used force including deadly force, including deployment of a chemical agent, on an unarmed man who was not an immediate threat of harm to anyone;

(k)    In *Aguirre, et al. v. County of Riverside, et al.*, case number 5:18-cv-00762 DMG (SPx), Defendant COUNTY failed to discipline its

31

deputy who used excessive force against the decedent who was not an immediate threat of death or serious bodily injury, arguing that the force was reasonable even after a unanimous jury returned a verdict in favor of plaintiffs;

(l)     In *Orellana v. County of Riverside, et al.*, case number 5:19-cv-01263 JGB (SHKx), Defendant COUNTY failed to discipline its deputies who used excessive force including deadly force against an unarmed man who was not an immediate threat of harm to anyone.

119.   Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the CITY routinely ratifies such behavior and maintains a practice of allowing such behavior:

(a)     In *Acosta. v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers;

(b)     In *Erickson v. City of Hemet, et al.*, case number 5:19-CV-00779-CJC, Defendant CITY settled with a man who was attacked by a K-9;

(c)     In *Mendoza v. City of Hemet, et al.*, case number 5:21-cv-01134-JGB-SHK, Defendant CITY settled with an unarmed woman who was shot in the back with kinetic rounds requiring emergency surgery.

(d)     In the pre-litigation matter of *Gabriel Garcia v. City of Hemet*, Defendant CITY agreed to a money settlement with an unarmed man who was detained without cause and suffered a fractured orbital as the result of an unreasonable use of force by a CITY police officer.

(e)     On August 17, 2023, CITY police officer Jacob Hobson was criminally charged by the Riverside County District Attorney's Office with, among other things, two counts of assault by a peace officer under color of authority.

120.   By reason of the aforementioned acts and omissions, PLAINTIFF has and will suffer past and future pain and suffering, loss of enjoyment of life, medical expenses, and loss of earning capacity.

121.   Accordingly, Defendants CITY and COUNTY and DOES 9-10, inclusive, are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

122.   PLAINTIFF also seeks attorneys' fees and costs of suit.

1

## **PRAYER FOR RELIEF**

2

WHEREFORE, PLAINTIFF, KORON LEKEITH LOWE, requests entry of

3

judgment in his favor against CITY OF HEMET, COUNTY OF RIVERSIDE,

4

DYLAN DETWILER; and DOES 1-10, inclusive, as follows:

5

    1.    For compensatory damages, according to proof at trial, under federal

6

        and State law;

7

    2.    For punitive and exemplary damages against the individual defendants

8

        in an amount to be proven at trial;

9

    3.    For statutory damages;

10

    4.    For reasonable attorneys' fees including litigation expenses;

11

    5.    For costs of suit and interest incurred herein; and

12

    6.    For such other and further relief as the Court may deem just and proper.

13

14

Dated: January 25, 2024        **LAW OFFICES OF DALE K. GALIPO**

15

                                  **LAW OFFICES OF GRECH & PACKER**

16

             By:      */s/    Trenton C. Packer*

17

                 Dale K. Galipo, Esq.

18

                 Trenton C. Packer, Esq.

19

                 Marcel F. Sincich, Esq.
                 *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

34

## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby submits this demand that this action be tried in front of a jury.

Dated: January 25, 2024          **LAW OFFICES OF DALE K. GALIPO**
                                 **LAW OFFICES OF GRECH & PACKER**

                     By:      _____/s/_____Trenton C. Packer_____
                              Dale K. Galipo, Esq.
                              Trenton C. Packer, Esq.
                              Marcel F. Sincich, Esq.
                              *Attorneys for Plaintiff*